United States v. Moore In the police court, my name is Thomas Gable. I'm an assistant federal public defender for the Southern District of Illinois. The question before the court today is whether or not the sentencing judge abused his discretion by significantly varying from the guideline range based on a justification that is insufficient to support the magnitude of the variance. How many months did the two-level increase for obstruction of justice add to Moore's federal sentencing range? I suspect it's a fairly modest increase. Your Honor, if we look at the range and add two more on top of it, it would be 59 months, depending on how you looked at it. If we looked at the 188 to 235 and you increased it by two more, it would be 59 additional months. In fact, at sentencing, I asked for 60 months consecutive and the rest of it concurrent. My client's sentencing range was 188 to 235 months. He had gotten a 34-year sentence from the state of Illinois for the attempted murder. He was then tried for the UPS robbery. The trial judge found, along with the PSR writer, that 5G 1.3b applied, which should have made the sentence run concurrently. Looking at it and understanding that the seriousness of what happened needed to be addressed, and both the state and the federal court needed to have time for some of the time that the individual served needed before each crime, I suggested 60 months consecutive. When the judge went to the 135 months, which is a high end of the range, he did not fully justify why he was varying upwards, and it became a variance issue rather than a sentencing issue, Your Honor, because when you decide that you're not going to follow the 5G 1.3b, you have to fully justify the amount of variance. Well, I mean, the standard of review is very deferential, of course. And, you know, even you agreed that some part of the sentence should be served consecutively. I mean, under the reasons given by the district judge, how much of the sentence could be run consecutively? Your Honor, that's not really for me to say. I made a recommendation. The judge, if he fully justified it, could have done the whole 235. Right. That's what I'm wondering. Why was his rationale adequate to justify 60 months consecutive but not the full 235 months? In my mind, that's the issue, Your Honor. And that's the reason why I'm asking for it to be vacated and sent back for resentencing, because the judge, when he addresses all the issues, could either give 60 months, 120, or 235. And obviously that's his decision. I, of course, will have an opinion about it, but that's a different issue. When you look at the actual reason for 5G 3.1 existing, it's to make sure that offenses that are all part of one incident are punished the same. When you split them up and you have one offense being tried in one sovereign and one offense being tried in the other, there's a chance that people are going to be doubly punished for the same conduct. And that's what I believe. This is not the same conduct. Well. This is related conduct. Related conduct. But it's not the same. It's not the same. He tried to kill a witness. It's not the same. Almost did. But the PSL writer and Judge Hurden, excuse me, the trial judge, found that 5G 3.1b applied and should be concurrent time. If he had found that 5G 1.3c applied, it would have been asking for consecutive time, and that's not what was found. I think the government challenges that finding. The government didn't appeal that, Your Honor. I know that in the reply brief they talk about that, but that was never appealed. And so while I understand their position. I don't know that that requires a cross-appeal. The case is here, and they did argue it. And I don't think it was just an ‑‑ I mean, the government had one brief, and it wasn't an afterthought argument. The government has argued that this is a 5G 1.3c case and not a 5G 1.3b case. The judge clearly found that the obstruction of justice started and ran through the whole incident. It started with the threats that were made by my client and ended with the shooting that occurred the next night. The judge rested the obstruction enhancement on a factual basis that included all of that content. That's correct, Your Honor. And what I pointed out in the brief that we wrote was that if he had even said that there was two obstructions of justice, and if you try to split it up and say one obstruction of justice and then a second. It's not a question about two obstructions of justice. It's a question of what conduct justified the application of the obstruction enhancement and the threats would have been independently sufficient. That's correct, Your Honor. I believe that the PSL writer and the trial judge got it correct and that 5.3c 5G 3.1b applied. I know that's the position you're taking. I'm not hearing a why. Well, I believe all the acts from the robbery were all interrelated and intertwined to such a degree that while you could split it off, Your Honor, that's always the case with obstruction of justice. You can make them all separate if you wanted to, and then, therefore, you could always have the 5G 3.1c applying, and there'd be no reason to have the 5G 3 portion. There'd be none. The reason that that was written was for a specific purpose. I think the Supreme Court looked at it and said that there was a reason to try to make all of these intertwined-type cases to have some consistency across the board in punishment. So if he had attempted to kill two witnesses, it's still not a sub-c case. It's a sub-d case. Your Honor, I could probably make an argument either way, but I don't know because that's not what happened. And for me to start making speculations on facts that didn't occur. Well, if the judge had, for example, let's say he tried to kill two witnesses, and the judge said, I'm going to give an obstruction enhancement for the attempted murder of the first witness, but no more, then where are we? If that was the case, I might be up here appealing the judge's decision, Your Honor. But right now, I agreed with the logic that the trial judge used. So it's very difficult for me to try to imagine what the argument would be. Obviously, if he had tried to kill two witnesses, it would be much more of a troublesome case, even though this case is troublesome, Your Honor. The seriousness of the offense has to be looked at, and we have to try to understand what we need to do for punishment. He's going to be serving 28 years on a state case. He'll be serving about 17 years on this federal case. The question becomes how much of that needs to be consecutive for both deterrence and punishment. If you'll please, Court, I'm going to sit down and save some time for rebuttal. Thank you, Mr. Gadel.  Good morning, Your Honors. The judge's reasons in this case were set forth very well, I believe, and they included the seriousness of the federal offense, which was armed robbery of a driver of a UPS truck in Interstate Commerce. The judge commented on the seriousness and dangerousness of the crime. The judge noted that the defendant threatened a witness, that is, the 16-year-old girl, but in addition to threatening her, he also attempted to murder the 16-year-old witness. The judge also noted that the defendant planned to rob another UPS truck and a FedEx truck. He also committed prior violent crime, which was also noted by the judge. The violent crime included specifically residential burglary. It also included a misdemeanor battery. The judge commented that the defendant instilled fear of death in the truck driver. The judge also commented that there was an interference with commerce and multiple victims whose packages were stolen. The judge mentioned the lasting impact on the driver and his family. The judge noted that the defendant was convicted of a separate crime, that is, possession with intent to deliver a controlled substance, and the judge also noted that separately the defendant's criminal history, including, as I said before, the burglary and the misdemeanor battery. The judge also noted that the defense argued only for leniency because he was in a better place now and because of his age. The judge also noted that a harsh sentence was necessary for the protection of the public. Judge Sykes, as you noted, this is not a double punishment, as the defendant argued in his brief. There's no overlap of the elements here of the two crimes. This is robbery versus the state charge of attempted murder. There are different dates of the crimes, different victims, and separate harms involving each crime. So far I'm hearing an argument that the judge's sentence is a reasonable variance from the guidelines recommendation of a concurrent sentence. It is a reasonable. Are you backing away from your argument that this belongs in sub C of 5G1.3? No, Your Honor. I'm not backing away from it. As I argued below, there are alternative means for imposing the consecutive sentence, and I've argued that on appeal as well in my brief, in that the two are, number one, that it would be a 5G1.3c guideline sentence, but also that the judge is, of course, free to disregard the advice of the guidelines under Section 3584 and impose a consecutive sentence. So... The judge attributed the entire course of conduct against the victim of the shooting as... I'm sorry.  The defendant's entire course of conduct against the victim of the shooting, the witness, as the factual basis for the obstruction enhancement. He did, but he also noted that there was other obstructive conduct. He did note that obstruction occurred with the two. Well, he specifically acknowledged that the government had established obstruction with the initial threat, that is before the day of the shooting, the day in between the robbery and the day of the shooting. The judge did acknowledge that that constituted obstruction, and he also commented that he was not even sure of his ruling on the 5G matter as to whether or not it is sufficient for the obstruction that is the attempted murder obstruction to constitute the provision for 5G1.3b. He said he wasn't sure about that. The Nania case, it seems to me, as well as the First Circuit case of Carrasco, both established that what is important here is to examine whether the conduct actually had an effect on the sentence. And here, because, as the government argued below, because the obstruction chronologically should have been established with the initial threat, that the attempted murder doesn't really increase, it doesn't increase at all, the sentence for obstruction. It wasn't used as relevant conduct? It is relevant conduct, but under Nania, Nania says it both has to be relevant conduct, but it also says that there has to be an effect on the sentence. And here, it does not appear that there was any effect because the obstruction had already been established. Judge Rovner, your initial question, I believe, was what effect there was with the obstruction. My opponent indicated 59 months. Last night, I calculated it as offense level 32, criminal history 5 would be a range of 188 to 235. But without the obstruction, it would be offense level 30, criminal history 5 for 151 to 188 months. So I think there's 47 months difference. But you can, I'm sure, check the guidelines to be sure what is accurate. If you have no further questions. I'm appreciative that you both did it for me. Okay. If only you had agreed. If you have no further questions, I just simply ask that you confirm the decision in court. Thank you, Mr. Clark. Anything further, Mr. Cabello? Just two comments, Your Honor. A clarification, the 59 months came if we considered two separate obstruction of justice for both the threat and the shooting. That's the difference between the 59 and the 47? 47. Months. The other thing, the Nadia case was actually decided using 5G3D, 5G3, 1.3D, not 5G3.1, 1.3B. Thank you. Thank you very much. Curses on that. The case is taken under advisement.